## Linaka *v.* Firemen's Pension Fund of Philadelphia, Appellant.

Argued October 21, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES and HIRT, JJ.

*James Francis Ryan,* for appellant.

*John F. E. Hippel,* with him *George B. Clothier* and *Edmonds, Obermayer & Rebmann,* for appellee.

OPINION BY STADTFELD, J., July 23, 1942:

John Linaka, Jr. was a hoseman in the Philadelphia Fire Department and a member in good standing of the Firemen's Pension Fund of Philadelphia. On October 30, 1938, he was instantly killed as a result of the collision of two fire engines answering an alarm. Ellen Linaka, decedent's widow, made application on November 4, 1938 to defendant corporation for a widow's pension under Article 11, section 5 of the association's by-laws which provided, inter alia, that "the widow ......of a member who was killed while in the discharge of his duty ...... shall be entitled to apply for a pension". In accordance with a further provision contained in the

same section, plaintiff's application was on the morning of December 6, 1938, referred to an investigating committee of the organization for the purpose of considering the application and making a report thereon.

That evening the annual meeting of the Pension Fund was held and several changes were made in the by-laws. Article 12, section 5 which had theretofore provided that "any pension allowed to a widow shall be twenty (20) dollars per month", was amended so as to increase the widow's pension to $50. Section 2 of the same Article was amended by adding a provision that "the pension granted to a widow ...... shall begin on the date of the death of the member". Prior to this amendment there had been no express provision in the by-laws as to when pensions granted a widow were to begin. It had been the customary practice of the organization, after commencing the monthly payments of the pension upon approval of the application, to make an additional payment as a "donation". This sum was equivalent in amount to the total monthly pensions covering the period from the death of the member to the approval of the application. From and after the time of approval the regular monthly pensions were payable.

On January 3, 1939 the investigating committee, to which plaintiff's application had been referred, rendered its report recommending to the Board of Control that plaintiff be placed on the pension roll at a monthly pension of $20 dating from February 1, 1939. The Board of Control approved the recommendation and further, in accordance with the customary course of the association, awarded plaintiff a "donation" of $60, a sum equivalent to the amount of pension she would have received from November 1, 1938, the month immediately following the death of her husband, to January 31, 1939, the last day before the commencement of the regular monthly pension.

The Pension Fund forwarded one check in the amount of $60 and, thereafter, from February 1, 1939, several

checks, one per month, in the amount of $20 each to plaintiff. All checks were returned without prejudice. Suit was thereafter brought upon a claim for eight months pension, at $50 per month from November 1, 1938 to June 1, 1939, totalling $400 together with interest thereon.

At the termination of trial of the case the trial Judge directed a verdict in favor of the plaintiff. Defendant's motion for a new trial was dismissed by the court in banc and judgment was entered on the verdict. This appeal followed.

No question has been raised as to the discretion of the Board of Control to award appellee a pension, because it did in fact award one. The sole issue for determination is whether appellee is entitled to recover for the monthly pensions due her at the rate of $20 per month or $50 per month.

Article 2 of the appellant's certificate of incorporation sets forth that the association was formed to accumulate a permanent fund from the monthly dues of its members from legacies, bequests, gifts and other sources, for the purpose of placing on the pension list (1) such members as may be retired from the rolls of the Fire Bureau of the City of Philadelphia on account of chronic ailment, permanent disability through accident, or by term of service, and (2) the widows, or dependent parents and orphans of members who may be killed or die from injuries received while in the discharge of their duty.

Potential beneficiaries of the association's accumulated fund are classified into two groups, viz., members of the association and certain relatives of members. Appellee falls within the second group. Hence we are concerned here solely with the rights of claimants of the second group and with those by-laws of the association which govern them. With respect to the claims of such relatives of members for pension benefits, Article 11, section 5 of the association's by-laws governs.

That section provides that such persons are entitled to apply for a pension if the member of the association died within sixty days of receiving the injuries, sustained in the actual discharge of duty, and as a direct result thereof. It further provides that the Board of Control may require such claimants to file certified copies of the certificate of death, marriage or birth together with the respective applications; that the applications shall be referred to a committee of three members for consideration and reporting back to the Board of Control; and that the granting or withholding of any pension shall be entirely at the discretion of the Board of Control.

As a general proposition the constitution and by-laws of a voluntary association constitute the compact which binds its members together and the law by which they are to be governed: *Manning v. Klein et al.,* 1 Pa. Superior Ct. 210, 216. The by-laws constitute the contract of association of its members: *Leatherman et al., v. Wolf et al.,* 240 Pa. 557; 564, 88 A. 17. The by-laws are rules or laws adopted by a corporation or association for the regulation of its own action and concerns, and of the rights and duties of its members among themselves: *Hayes v. German Beneficial Union,* 35 Pa. Superior Ct. 142, 148; *Gordon et al., v. Tomei et al.,* 144 Pa. Superior Ct. 449, 457, 19 A. 2d 588.

Thus, the by-laws of appellant association gave expression to the terms of the contract made by and between the association and its members. Section 5 of Article 11 provided a definite procedure to be followed by certain relatives of a deceased member for the collection of the pension conditioned upon the death of the member under given circumstances. The required procedure was unquestionably followed in this case. As to such relatives of a deceased member, the agreement between the association and the member, as expressed by the by-laws, was in the nature of a contract for the benefit of a third party as donee beneficiary.

See, *Carpenter, Admr., v. Emp. P. & L. Assn.,* 324 Pa. 540, 189 A. 469. The rights of such third party were conditioned upon the death of the member under certain circumstances and became fixed upon the happening of that event. It was that particular event which provided the basis for and gave rise to any claim against the association. Hence, it is with reference to the time of the death of the member that the rights of the dependent relative are to be determined.[1]

John Linaka, Jr., the deceased member of the appellant association, was killed on October 30, 1938. On that date Article 12, section 5 of the association's by-laws provided that "any pension allowed to a widow shall be twenty (20) dollars per month." Subsequently, on December 6, 1938, this provision was duly amended so as to increase a widow's pension to $50. This amendment was enacted prior to the formal action of Board of Control, on January 3, 1939, approving appellee's application for the widow's pension. For this reason appellee contends that the increase in pension payments, although provided for subsequent to the death of her husband, should relate back to the time of his death, and that she is entitled to the benefit of the increase from the beginning of the month next following the death.

It is well settled that by-laws never operate retroactively unless the language is such as to admit of no other reasonable construction: *Roblin v. Knights of the Maccabees,* 269 Pa. 139, 143, 112 A. 70. See, also, *Hayes v. German Beneficial Union,* supra, 149. There is nothing in the amended by-laws of the association to show that they were intended to operate retroactively, nor can it be said that the amended by-laws, reasonably

---

[1] It has frequently been held that a member himself of an incorporated beneficial society can claim only such benefits as are prescribed by the by-laws existing at the time he applies for relief: *St. Patrick's Male Beneficial Society v. McVey,* 92 Pa. 510; *Chambers v. Knights of Maccabees,* 200 Pa. 244, 246, 49 A. 784.

construed, can be applied only retroactively. On the contrary, the intention seems clearer that they are to be construed only prospectively. It is our opinion, therefore, that appellee is entitled to a widow's pension of $20 per month.

The judgment of the court below is reversed and the record is remitted with directions to enter judgment not inconsistent with this opinion.